CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
(E-Mail: Cuauhtemoc_Ortega@fd.org)
ADAM OLIN (Bar No. 298380)
(E-Mail: Adam_Olin@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012
Telephone: (213) 894-1462
Facsimile: (213) 894-0081

Attorneys for Defendant
MARK ADAM SKARULIS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARK ADAM SKARULIS,<br>Defendant. | Case No. 19-CR-537-RGK<br><br>**DEFENDANT MARK ADAM SKARULIS'S SENTENCING MEMORANDUM; DECLARATION; EXHIBITS** |

Defendant Mark Adam Skarulis, through counsel, hereby submits this sentencing memorandum for the Court's consideration prior to sentencing.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 8, 2021

By */s/ Adam Olin*
ADAM OLIN
Deputy Federal Public Defender
Attorneys for Mark Adam Skarulis

## I. INTRODUCTION

Mark Adam Skarulis did not file a tax return for the 2014 tax year. Mr. Skarulis has taken responsibility for his conduct by pleading guilty, as well as executing closing agreements with the Internal Revenue Service assessing fines, penalties, and interest. He has no justification for his failure to file his required tax return. During the relevant period, Mr. Skarulis was involved in a contentious divorce and custody proceeding that resulted in his ex-wife moving with their son to Germany, involving allegations he could not adequately support the child. He was living month-to-month, reliant upon loans and investments from Imaad Zuberi both to survive and to keep his struggling start up operating. And so Mr. Skarulis failed to file an income tax return that would have required him to pay thousands in federal taxes that he simply did not have.

[redacted]

For these reasons, Mr. Skarulis respectfully requests that the Court impose a sentence of one year of probation.

## II. THE PRESENTENCE REPORT

The Probation Office calculates a total offense level of 10 and criminal history category I. PSR at 3. Mr. Skarulis concurs in Probation's calculation. [redacted]

## III. THE APPROPRIATE SENTENCE

**B. Imaad Zuberi Preyed Upon Mr. Skarulis's Challenging Personal Circumstances**

At surface level, Mr. Skarulis's involvement in Zuberi's activities is puzzling. Mr. Skarulis is a trained engineer who has spent the past decade focused on exploiting certain intellectual property he developed that would enhance tourists' experience visiting

museums and other points of interest. He has no experience in foreign relations, lobbying, or politics. However, Mr. Skarulis had the misfortune of meeting Zuberi while they were both students in university. Following a school trip, they struck up a friendship. Mr. Skarulis knew Zuberi was wealthy, and thought he might be a potential investor in his start-up.

From the outset, this friendship involved a decidedly uneven power dynamic. Zuberi came from significant wealth, whereas Mr. Skarulis was struggling keep his start-up afloat. Needing to hide his involvement with the Sri Lanka lobbying agreement, Zuberi viewed Mr. Skarulis as a controllable cut-out whose need for investment funds for his start-up and the perception of financial legitimacy for his on-going divorce proceedings rendered him exploitable. Zuberi first made a modest investment in Mr. Skarulis's start-up in 2013, followed by two payments designated equity investments. Dkt. 35 at 10. Soon thereafter, however, Zuberi began paying Mr. Skarulis a "salary," which Zuberi used to "wean[] Skarulis onto dependency" on Zuberi. *Id.*

Throughout this period, Mr. Skarulis's marriage was dissolving. His ex-wife had begun a relationship with a United States service member who was set to be deployed to Germany. Mr. Skarulis's ex-wife wished to relocate there along with the new partner and her son with Mr. Skarulis. Thus, the pending divorce proceedings, including a custodial determination,[2] took on a new level of immediacy, as Mr. Skarulis was at risk of being separated from his son by an entire continent. The issue of Mr. Skarulis's fitness as a father relied, in part, upon whether he could provide for his son. And so the monthly salary Zuberi offered was not simply an income, but an essential payment to prevent his son from being moved to Germany. Zuberi was well-aware of the divorce proceedings, and the specific issue of Mr. Skarulis's finances, and thus leveraged his payments to direct Skarulis.

---

[2] Specifically, Mr. Skarulis's ex-wife could not unilaterally move their child to Germany given their joint custody.

As set forth in the government's sentencing memorandum, Mr. Skarulis had no stake in Zuberi's activities and simply collected a modest monthly salary for performing certain ministerial tasks. Dkt. 35 at 10. In essence, Mr. Skarulis executed agreements, opened bank accounts, and registered corporate entities upon the direction of Zuberi. *Id.* Lacking any experience in this world, Mr. Skarulis was not a meaningful participant in Zuberi's schemes, which were designed to benefit Zuberi only. Zuberi saw Mr. Skarulis's desperate need and exploited it.[3]

**C. The Court Should Sentence Mr. Skarulis to a One-Year Term of Probation**

The appropriate sentence under § 3553 is a one-year term of probation. This sentence is within the guidelines range, both in terms of its non-custodial nature and its duration. *See* § 5B1.2 (recommending a one-year minimum for an offense level of 6 or greater, with no such recommendation for below offense level 6). This term of probation sufficiently sanctions Mr. Skarulis for his conduct. Mr. Skarulis has already executed the necessary closing agreements with the IRS, by which he has consented to the imposition of the appropriate tax liability. Dkt. 35 at 12. Moreover, this matter has been pending for approximately 18 months, during which there have been no issues in Mr. Skarulis's compliance with the law.

The Court should moreover decline to impose the government's requested six-month term of home confinement. For one, Mr. Skarulis is a first-time offender convicted of a tax misdemeanor with a guidelines range of 0-6 months. *See* PSR ¶¶ 30-37 (reflecting no law enforcement contacts). While home detention is a term of supervision courts may impose, the guidelines note that it should be done "only as a substitute for imprisonment." § 5F1.2. For the reasons discussed herein, a term of imprisonment, and therefore home confinement, is not appropriate. Home confinement

---

[3] [redacted]

would also interfere significantly with Mr. Skarulis's ability to co-parent his minor son, who lives primarily with the child's mother in rural Tennessee. PSR ¶ 44.[4]

Nor should the Court impose the government's requested 1040 hours of community service, corresponding to 40 hours a week for six months. The predicate for this recommendation appears to be the government's belief that Mr. Skarulis is unemployed. *See* Dkt. 35 at 8 (citing Mr. Skarulis's "lack of gainful employment"). The government is incorrect. Instead, Mr. Skarulis continues to work as an entrepreneur on an application which utilizes his patent. PSR ¶ 53. Mr. Skarulis also provides caretaking services for his seriously ill uncle who is suffering from cancer. *See* PSR ¶¶ 42, 53. A term of supervision that amounts to a full-time obligation to perform community service -- during the pandemic, no less -- is unwarranted, will interfere with Mr. Skarulis's other duties, and the Court should decline to impose it.

## IV. CONCLUSION

For the foregoing reasons, Mr. Skarulis respectfully requests that the Court sentence him to a one-year term of probation.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 8, 2021

By */s/ Adam Olin*
ADAM OLIN
Deputy Federal Public Defender
Attorneys for Mark Adam Skarulis

---

[4] Similarly, Mr. Skarulis respectfully requests that the Court remove term 4 of Second Amended General Order No. 20-04, which requires permission to leave the resident judicial district. Mr. Skarulis routinely travels to the Eastern District of Tennessee where his son lives, and also travels for purposes of fundraising for his start-up company. This term derives from § 5B1.3(c)'s policy statement as to "recommended" terms. However, a non-mandatory term must still meet the normal statutory requirements as applied to Mr. Skarulis. *Cf. United States v. Watson*, 582 F.3d 974, 982 (9th Cir. 2009) (interpreting terms of supervision under § 3583). Requiring permission for travel does not meaningfully rehabilitate Mr. Skarulis, foster deterrence, or protect the public.

# DECLARATION OF ADAM OLIN

I, Adam Olin, hereby state and declare as follows:

[redacted]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: March 8, 2021 By */s/ Adam Olin*

ADAM OLIN
Deputy Federal Public Defender
Attorney for MARK ADAM SKARULIS